**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION**

| | |
|---|---|
| CHAD KNOX, STEVEN WHITING, *on Behalf of Themselves and All Others Similarly Situated*, | Civil Action No.: |
| Plaintiffs, | |
| v. | |
| JPMORGAN CHASE BANK, N.A.; CHASE BANK USA, N.A.; and ASSURANT, INC., | |
| Defendants. | |

**<u>CLASS ACTION COMPLAINT</u>**

Plaintiffs, CHAD KNOX and STEVEN WHITING ("Plaintiffs"), on Behalf of Themselves and All Others Similarly Situated, file this class action complaint against JPMORGAN CHASE BANK, N.A., CHASE BANK USA, N.A., and ASSURANT, INC. (collectively "Defendants") and allege the following:

**<u>INTRODUCTION</u>**

1.      This is a class action lawsuit filed to redress injuries that Plaintiffs, and certain classes of consumers as set forth herein, have suffered and will continue to suffer as a result of the practices of Defendants relating to force-placed hazard insurance policies and force-placed wind insurance policies on residential mortgages.

2.      Defendants have engaged in a pattern of unlawful and unconscionable profiteering and self-dealing in regards to their purchase and placement of force-placed insurance policies in bad faith.

1

## PARTIES

3.      Plaintiffs CHAD KNOX and STEVEN WHITING are natural persons over the age of 21 and otherwise *sui juris*.

4.      Defendant, JPMORGAN CHASE BANK, N.A. ("JPMorgan"), a subsidiary of JPMorgan Chase & Co., is a national banking association that conducts business in Florida and other states throughout the United States.  Non-party Chase Home Finance, LLC ("Chase Home Finance") is a Delaware limited liability company that, during the relevant time period, served as the primary servicing unit for loans originated and/or acquired by affiliates of ultimate parent JPMorgan Chase & Co.  On or about May 1, 2011, Chase Home Finance was merged with and into Defendant JPMorgan, with JPMorgan as the surviving entity.  Accordingly, Defendant JPMorgan is named as a defendant in this action both in its own capacity and as successor-in-interest to Chase Home Finance.

5.      Defendant CHASE BANK a subsidiary of JPMorgan Chase & Co., is a national banking association that conducts business in Florida and other states throughout the United States.

6.      In all of its actions described herein, Chase Home Finance acted on its own behalf and as the duly authorized agent of Defendants JPMorgan and Chase Bank or other owners of the underlying notes and mortgage agreements.  Defendants were contractually obligated to service the loans at issue pursuant to the terms of the mortgage.

7.      Defendant ASSURANT, INC., is a Delaware corporation which is headquartered at One Chase Manhattan Plaza, New York, New York 10005.  According to its website, Assurant is a provider of specialized insurance products including "lender-

placed" homeowners insurance or force-placed insurance ("FPI"). According to Assurant's 2010 Annual Report as filed with the Securities and Exchange Commission ("SEC") on SEC Form 10-K, "the majority of [Assurant's] lender-placed agreements are exclusive" and those agreements require Assurant to "automatically issue these policies when a borrower's insurance coverage is not maintained." Upon information and belief, Defendant JPMorgan has a significant indirect financial stake in Assurant.

## JURISDICTION AND VENUE

8.     The Class Action Fairness Act of 2005 ("CAFA"), Pub. L. No. 109-2, 119 Stat. 4 (codified in various sections of 28 U.S.C.), requires that this action be brought before this Court.

9.     This Court has jurisdiction over Defendants because they are either foreign corporations authorized to conduct business, are doing business in Florida and have registered with the Florida Secretary of State, or they do sufficient business, have sufficient minimum contacts with Florida, or otherwise intentionally avail themselves of the Florida consumer market through the promotion, marketing, sale, and service of mortgage or other lending services and insurance policies in Florida. Accordingly, this purposeful availment renders the exercise of jurisdiction by this Court over Defendants and their affiliated or related entities permissible under traditional notions of fair play and substantial justice.

10.     This Court has subject matter jurisdiction because the amount in controversy exceeds $75,000, exclusive of interest, costs, and attorneys' fees, and diversity exists between the Plaintiff and the Defendants. 28 U.S.C.A. § 1332(a)(1).

11.     In addition, this Court also has subject matter jurisdiction because the amount in controversy exceeds $5 million and diversity exists between the Plaintiffs and

the Defendants. 28 U.S.C.A. § 1332(d)(2).   Further, in determining whether the $5 million amount in controversy requirement of 28 U.S.C. § 1332(d)(2) is met, the claims of the putative class members are aggregated. 28 U.S.C. § 1332(d)(6).

12.     Venue is proper in this forum because at all times relevant hereto, Plaintiffs resided in the Southern District of Florida, and a substantial portion of the practices complained of herein occurred in the Southern District of Florida, and/or because Defendants have received substantial compensation as a result of doing business in the Southern District of Florida.   Moreover, at all times material to the allegations contained herein, Defendants personally and/or through an agent:

a.     operated, conducted, engaged in, and carried on a business venture in the Southern District of Florida or had an office or agency in the Southern District of Florida; and/or

b.     engaged in substantial activity within this state and district.

13.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(c) because a substantial part of the events giving rise to Plaintiffs' claims occurred in the Southern District of Florida and, as set forth above, Defendants are subject to personal jurisdiction in this district.

14.     All conditions precedent to this action have occurred, been performed, or have been waived.

## **FACTUAL ALLEGATIONS**

15.     Defendants JPMorgan and Chase Bank originate mortgage loans and acquire loans from other lenders.   Each loan is secured by a deed of trust on the underlying property.   Prior to its merger into Defendant JPMorgan, Chase Home Finance acted as the servicer of these loans.

16.    Upon information and belief, Defendants JPMorgan and Chase Bank have a significant indirect financial stake in Assurant.  *See* JPMorgan Chase & Co., Statement of Acquisition of Beneficial Ownership (Schedule 13G/A) (January 19, 2010).

17.    One of the many services provided by JPMorgan and Chase Bank is providing and servicing real property mortgages.

18.    Each and every mortgage at issue in this litigation which is owned and/or serviced by JPMorgan and Chase Bank, requires borrowers, including Plaintiffs, to maintain insurance on their real property.  If the borrower fails to maintain the requisite insurance, the mortgage servicer may forcibly place insurance on the property.  Such policies provide less coverage and are substantially more costly than the borrowers' original policies, while often providing lucrative financial benefits to servicers and/or their affiliates.  Further, such policies often provide unnecessary or duplicative coverage, in that either they are improperly backdated to collect premiums for time periods during which the mortgagor had absolutely no risk of loss or they provide coverage for an area in which the borrower already has the requisite coverage.

19.    The discretion afforded to the Defendants to force place insurance is limited by the bounds of reasonable conduct.  Defendants routinely exceed the bounds of reasonableness thought the wrongful conduct described herein with respect to the force placement of insurance.

20.    Pursuant to the mortgage contracts at issue, once an insurance policy has lapsed, the mortgage servicer can purchase insurance for the home, "force-place" it, and then charge the borrower the full cost of the premium.  However, these premiums are not the actual amount that JPMorgan or Chase Bank pays, because, upon information and belief, a substantial portion of the premiums are refunded to JPMorgan

or Chase Bank through various kickbacks and/or unwarranted commissions. The mortgage contracts at issue do not disclose that the lender or other service will receive these commissions, kickbacks or reinsurance premiums from force placed insurance providers purchasing the insurance.

21.     Throughout the Class Period, Defendants have engaged in unlawful, abusive and unfair practices with respect to force-placed insurance by receiving fees, payments, commissions, improper reinsurance premiums and/or other things of value from providers of force-placed insurance; by providing force-placed insurance from their own affiliates at a substantial, improperly high cost to the buyer; by providing force-placed insurance that is duplicative of insurance already held by the borrower; and, by forcing borrowers to pay for unnecessary insurance.

22.     JPMorgan and Chase Bank's unlawful actions include purchasing unreasonably high-priced insurance policies. In accomplishing this forced placement, it is believed that JPMorgan and Chase Bank, in bad faith, entered into an arrangement with Assurant to be the insurance provider without seeking competitive bids on the open market. Under this arrangement the Defendants charge exorbitant rates to Plaintiffs and the Class who have no way of refusing the force-placed charges. These premium rates or charges were not arrived at on a competitive basis and were well in excess of those which could have been retained in the open market by JPMorgan, Plaintiffs or the Class. Accordingly, no good faith arms-length transactions are taking place.

23.     The premiums on force-placed insurance policies generally cost at least five to six times, and often up to ten times, more than what the borrower was either originally paying or what the borrower could obtain if done so on a competitive basis on the open market.

24.    The force-placed insurance policies are extremely lucrative for the insurance providers and generate extremely high profit margins. Indeed, Assurant—considered one of the leading insurance providers—collected $2.7 billion of premiums in 2010 through its force-placed insurance division alone.  Commonly, the servicer selects the provider in accordance with pre-arranged agreements and force-places the policy in such a way as to receive a financial benefit.  In these cases, the servicer benefits by placing the policy either with (a) an affiliate or (b) with a third party provider who has already agreed to share revenue with the servicer in the form of a direct commission payment or through "reinsurance" premiums ceded to a subsidiary/affiliate of the servicer.

25.    Under a commission-type arrangement, the provider of a force-placed insurance policy pays a commission either directly to the servicer or to a subsidiary acting as an insurance "agent."  Typically with these arrangements, commissions are paid to a "licensed insurance agency" that is simply an affiliate or subsidiary of the servicer.

26.    Under a captive reinsurance-type arrangement, the provider of the force-placed insurance policy agrees to "reinsure" the force-placed policy with a subsidiary or "captive reinsurer" of the referring servicer.  In return for the subsidiary purportedly agreeing to assume a portion of the insurer's risk of loss, the insurer cedes to the subsidiary a portion of the premiums received on account of the policy.  For example, Defendant Assurant, one of the nation's largest provider of force-placed insurance has admitted that its force-placed insurance division "write[s] business produced by clients, such as mortgage lenders and servicers and financial institutions, and reinsures all of a

portion of such business to insurance subsidiaries of the clients."  *See* Assurant, Inc.'s Annual Report (Form 10-K), at 81 (February 25, 2010).

27.    Accordingly, Defendants have reaped significant profits from the practice of force-placing insurance.

28.    Upon information and belief, JPMorgan receives commissions or kickbacks from the force-placed insurance companies, such as Assurant, or the insurance brokers or agents once one of the high-priced, force-placed, insurance policies is purchased.  These kickbacks are directly tied to the cost of the force-placed insurance and are usually a percentage of the total cost of the policy.

29.    This arrangement provides the mortgage servicer with an incentive to purchase the highest priced force-placed insurance policy on a non-competitive basis that it can—the higher the cost of the insurance policy, the higher their commission or kickback.  Ultimately, the consumer pays the bill.  If the consumer cannot afford to pay the exorbitant premiums for force-placed insurance, the premiums are added to the mortgage's principal balance.

30.    In addition, the Defendants also retroactively force-place exorbitant insurance on homeowners for the periods of time in the past where coverage had lapsed or place coverage that is duplicative of policies held by the homeowners. This is done despite the fact that there are no claims during the lapsed period and the homeowner has since secured standard insurance.  Moreover, retroactive forced placed insurance is especially egregious given the fact that the National Association of Insurance Commissioners has stated that insurance is "prospective in nature" and that policies should not be backdated.

31.     The actions and practices described herein represent bad faith and unconscionable practices that, even if the terms of the mortgage could be construed to allow, would still be an abusive and unlawful use of its contract powers. Placing these unreasonably, uncompetitively, and excessively priced insurance policies on Plaintiffs and the similarly situated Class Members' mortgages without regard for competition on the open market to obtain a commercially reasonable price, is solely to maximize their own profits through the exorbitant cost of and by collecting kickbacks on those policies. Said conduct is prohibited by state and Federal law.

32.     Defendants' manipulation of their forced placed mortgage purchases has maximized the profits to themselves to the great detriment to Plaintiffs and the Class.

33.     Defendants were not, and are not, authorized by any federal, state, or local governing body, contract, or agreement to manipulate their forced placed insurance purchases in bad faith as alleged above.

34.     Furthermore, these fraudulent practices have recently come under fire by all fifty State Attorney Generals as part of a nationwide investigation. As the State Attorney Generals have recognized, this practice has greatly contributed to the foreclosure crisis.

## A.     Plaintiff Steven Whiting

35.     Plaintiff, Steven Whiting, obtained a mortgage from Washington Mutual secured by a parcel of real property in Broward County, Florida. The mortgage loan was serviced by JPMorgan and Chase Bank, who are also the successor in interest and/or assign of the mortgage.  A copy of the Whiting Mortgage is attached hereto as Exhibit A.

36.     From the inception of the mortgage, Mr. Whiting maintained in full force and effect the insurance required by the mortgage contract, including maintaining a

hazard insurance policy and a wind policy issued separate and apart from his hazard policy.

37.    In February 2012, Mr. Whiting began shopping for new insurance coverage. A short time later, Mr. Whiting, after a diligent effort to do so, secured new hazard insurance for the property.  However, he missed paying the premium by a few days and, as a result there was a gap in coverage.  Unfortunately, Mr. Whiting was not aware of the gap in coverage.  Throughout this time, Mr. Whiting maintained and kept current a separate wind policy for the property, as required by the mortgage.

38.    Thereafter, JPMorgan and Chase, without seeking competitive bids on the open market or attempting to re-establish Mr. Whiting's prior insurance, capriciously exercised their discretion in choosing an insurance policy and obtained a surplus-lines force-placed insurance policy for Mr. Whiting's property.

39.    In April 2012, after Mr. Whiting had purchased insurance for his property, Defendants notified him that they was retroactively force-placing an insurance policy on the property for the approximate 45-day lapsed period and adding the cost of the premium to his mortgage loan.  The force-placed insurance policy included a wind policy which was already covered by Mr. Whiting's private insurance.

40.    The cost of the premium of the force-placed insurance policy totaled approximately $2,900 for just the approximate 45-day lapsed period. This is amount far exceeded the amount of the monthly premium ordinarily paid by Mr. Whiting.

41.    The premiums charged to Mr. Whiting were exorbitant and illegal due to the Defendants' practices as described above.

### B.       Plaintiff Chad Knox

42.    Plaintiff Chad Knox obtained a mortgage from Washington Mutual Bank secured by a parcel of real property in Brevard County, Florida. The loan was serviced by JPMorgan and Chase Bank who are also the successor in interest and/or assign of the mortgage. A copy of the Knox Mortgage is attached hereto as Exhibit B.

43.    Mr. Knox maintained in full force and effect the insurance required by the mortgage contract. However, Mr. Knox began shopping for new insurance coverage.  A short time later, Mr. Knox, after a diligent effort to do so, secured new hazard insurance for the property.  However, in December 2010, there was a 14 gap in coverage.

44.    Defendants, without seeking competitive bids on the open market or attempting to re-establish Mr. Knox's prior insurance, capriciously exercised its discretion in choosing an insurance policy and contracted with Assurant to obtain surplus-line, force-placed, insurance for Mr. Knox's property.

45.    On January 3, 2011, Wells Fargo notified him that it was force-placing an insurance policy on him for a period starting on December 21, 2010.  The cost of the force-placed policy from December 21, 2010 through the date of the letter was $583.54.

46.    Despite being purchased in January 2011, the insurance policy, secured from Assurant, was backdated notwithstanding the fact that there was no damage to the property or claims arising out of Mr. Knox's property for that period.

47.    The cost of the annual premium of the force-placed insurance policy through Assurant totaled approximately $2,500. This is nearly five times the amount of the premium now paid by Mr. Knox.

48.    Defendants JPMorgan and Chase Bank notified Mr. Knox that the force-placed insurance policy had been secured and retroactively placed.

49.     The premiums charged to Mr. Knox were exorbitant and illegal due to the Defendants' practices as described above.

## CLASS ALLEGATIONS

### A.     Class Definition

50.     Plaintiffs bring this action against Defendants pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of themselves and all other persons similarly situated. Plaintiffs seek to represent the following class:

> All individuals who, within the applicable statute of limitations, were charged for a force-placed insurance policy procured through Defendants. Excluded from this class are Defendants, their affiliates, subsidiaries, agents, board members, directors, officers, and/or employees.

51.     Plaintiffs reserve the right to modify or amend the definitions of the proposed class before the Court determines whether certification is appropriate.

52.     Defendants subjected Plaintiffs and the respective Class members to the same unfair, unlawful, and deceptive practices and harmed them in the same manner. The conduct described above is the Defendants' standard and undisputed business practice.

### B.     Numerosity

53.     The individual class members are so numerous that joinder of all members is impracticable. The Defendants sell and service hundreds of thousands, if not millions, of mortgage loans and insurance policies in the state of Florida and nation-wide. The individual class members are ascertainable as the names and addresses of all class members can be identified in the business records maintained by the Defendants. The precise number of class members is certainly more than a thousand and can only be obtained through discovery, but the numbers are clearly more than can be consolidated

in one complaint and impractical for each to bring suit individually. Plaintiffs do not anticipate any difficulties in the management of the action as a class action.

**C.     Commonality**

54.     There are questions of law and fact that are common to the Plaintiffs' and Class Members' claims. These common questions predominate over any questions that go particularly to any individual member of the Class. Among such common questions of law and fact are the following:

a.     Whether Defendants JPMorgan and Chase Bank had captive reinsurance arrangements with Assurant, as a force-placed insurance provider and, if so, whether such arrangements involved sufficient transfer of risk and whether premiums charged under such arrangements were bona fide compensation paid solely for services actually performed;

b.     Whether Defendants paid and/or received commission payments from force-placed insurance providers;

c.     Whether Defendants wrongfully backdated force-placed insurance policies;

d.     Whether Defendants placed duplicative and unnecessary insurance policies;

e.     Whether Defendants' conduct constituted an unfair business practice;

f.     Whether JPMorgan and Chase Bank breached their mortgage contract with Plaintiffs and the Class by failing to seek competitive bids on the open market or attempting to continue or reestablish the prior existing policies;

g.      Whether the premiums charged for forced placed insurance were derived from a non-competitive process;

h.      Whether Defendants have unlawfully unjustly enriched themselves at the expense of the Plaintiffs and the Class;

i.      Whether Defendants breached the implied covenant of good faith and fair dealing;

j.      Whether the Defendants manipulated the forced placed mortgage purchases in order to maximize the profits to themselves to the great detriment to Plaintiffs and the Class;

k.      Whether the provision in the mortgage instrument relating to force-placed insurance is procedurally and substantively unconscionable because it does not contemplate or authorize Defendants to derive hidden financial benefits by force-placing the high cost insurance premiums;

l.      Whether the premiums charged are illegal and excessive because they include kickbacks and unwarranted "commissions" and

m.      Whether the premiums charged to Plaintiffs and the Class were *bona fide* and reasonable under Federal law.

**D.      Typicality**

55.      Plaintiffs are members of the Class as Defendants' own records plainly reveal. Plaintiffs' claims are typical of the claims of the Class because of the similarity, uniformity, and common purpose of the unlawful conduct of Defendants. Each class member has sustained, and will continue to sustain, damages in the same manner as Plaintiffs as a result of Defendants' wrongful conduct.

E.     **Adequacy of Representation**

56.     Plaintiffs are adequate representatives of the Class and will fairly and adequately protect the interests of the Class. Plaintiffs are committed to the vigorous prosecution of this action and have retained competent counsel, experienced in litigation of this nature, to represent them. There is no hostility between Plaintiffs and the unnamed class members. Plaintiffs anticipate no difficulty in the management of this litigation as a class action.

57.     To prosecute this case, Plaintiffs have chosen the law firms of Gilman Law, LLP.  This firm is very experienced in class action litigation and has the financial and legal resources to meet the substantial costs and legal issues associated with this type of litigation.

F.     **Requirements of Fed. R. Civ. P. 23(b)(3)**

58.     The questions of law or fact common to Plaintiffs' and each Class Member's claims predominate over any questions of law or fact affecting only individual members of the class. All claims by Plaintiffs and the unnamed class members are based on the force-placed insurance policies that Defendants unlawfully secured and their deceptive and egregious actions involved in securing the force-placed policy.

59.     Common issues predominate when, as here, liability can be determined on a class-wide basis, even when there will be some individualized damages determinations.

60.     As a result, when determining whether common questions predominate, courts focus on the liability issue, and if the liability issue is common to the class as is the case at bar, common questions will be held to predominate over individual questions.

### G. Superiority

61.     A class action is superior to individual actions in part because of the non- exhaustive factors listed below:

a.     Joinder of all class members would create extreme hardship and inconvenience for the affected customers as they reside all across the states;

b.     Individual claims by class members are impractical because the costs to pursue individual claims exceed the value of what any one class member has at stake. As a result, individual class members have no interest in prosecuting and controlling separate actions;

c.     There are no known individual class members who are interested in individually controlling the prosecution of separate actions;

d.     The interests of justice will be well served by resolving the common disputes of potential class members in one forum;

e.     Individual suits would not be cost effective or economically maintainable as individual actions; and

f.     The action is manageable as a class action.

### H. Requirements of Fed. R. Civ. P. 23(b)(1) & (2)

62.     Prosecuting separate actions by or against individual class members would create a risk of inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class.

63.     Defendants have acted or failed to act in a manner generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

## COUNT I
## BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING
### As To All Class Members (Against JPMorgan and Chase Bank)

64.     Plaintiffs re-allege and incorporate Paragraphs 1 – 63 above as if fully set forth herein and further allege as follows.

65.     Good faith and fair dealing is an element of every contract and imposes upon each party a duty of good faith and fair dealing in its performance. Common law calls for substantial compliance with the spirit, not just the letter, of a contract in its performance.

66.     Where an agreement permits one party to unilaterally determine the extent of the other's required performance, an obligation of good faith in making such determination is implied.

67.     Plaintiffs' and the Class Members' mortgage contracts contained a provision that allowed the mortgage servicer to force-place an insurance policy on the borrower if their homeowner's insurance lapsed.

68.     Mortgage servicers, like JPMorgan, are permitted to unilaterally choose the company to purchase force-placed insurance from and have an obligation to exercise their discretion in good faith and not choose the company capriciously and in bad faith (solely for their own financial gain) instead of seeking to continue or reestablish the prior insurance policies or seeking competitive bids on the open market in good faith.

69.     The mortgage contracts and insurance policies of Plaintiffs contained an implied covenant of good faith and fair dealing whereby Defendants agreed to perform the obligations under the policies in good faith, to deal fairly with Plaintiffs and the

Class, and not to charge excessive or unreasonable fees for the force-placed insurance for the purposes of maximizing their own profits at the Class's expense.

70.    Defendants breached their duty of good faith and fair dealing in at least the following respects, among others:

a.    Failing to make any effort whatsoever to maintain borrowers'' existing insurance policies and, instead, for the sole purpose of maximizing their profile, forcing borrowers to pay for insurance policies from providers of Defendants' choice;

b.    Using their discretion to choose an insurance policy in bad faith and in contravention of the parties' reasonable expectations, by purposefully selecting exorbitantly-priced force-placed insurance policies to maximize their own profits;

c.    Failing to seek competitive bids on the open market and instead contracting to create "back room" deals whereby the insurance policies are continually purchased through the same companies without seeking a competitive price;

d.    Assessing excessive, unreasonable, and unnecessary insurance policy premiums against Plaintiffs and Class and misrepresenting the reason for the cost of the policies;

e.    Collecting a percentage of whatever premiums are charged to Plaintiffs and the Class and not passing that percentage on to the borrower, thereby creating the incentive to seek the highest-priced premiums possible;

f.    Charging plaintiffs for commissions when the insurance is prearranged and no commission is due;

g.      Backdating force-place insurance policies to cover time periods which have already passed and for which there was already absolutely no risk of loss; and

h.      Misrepresenting in their force-placed insurance notices that borrowers were obligated to pay for backdated insurance coverage for periods during which the lender had no risk of loss due to the passing of time and/or the lender's coverage under a Lender Loss Payable Endorsement; and

i.      Failing to provide borrowers with any opportunity whatsoever to opt out of having their force-placed insurance policies provided by an insurer with whom Defendants had a commission and/or captive reinsurance arrangement.

71.     As direct, proximate, and legal result of the aforementioned breaches of the covenant of good faith and fair dealing, Plaintiff and the Class have suffered damages.

72.     Plaintiffs and other Class members have been damaged as a direct and proximate result of Defendants' breach and are entitled to damages.

**WHEREFORE,** Plaintiffs on behalf of themselves and similarly situated Class members, seek a judicial declaration determining that the premiums charged and the terms of the force- placed insurance policies violate the duties of good faith and fair dealing. Plaintiffs also seek compensatory damages resulting from Defendants' breach of their duties. Plaintiffs further seek all relief deemed appropriate by this Court, including attorney's fees and costs.

## COUNT II
## BREACH OF CONTRACT
## (against JPMorgan and Chase Bank)

73.     Plaintiffs re-allege and incorporate Paragraphs 1 – 63 above as if fully set forth herein and further allege as follows.

74.     Defendants have serviced loans evidenced by substantially similar standard form notes and mortgage contracts.

75.     To the extent that the mortgage contract of Plaintiffs and the Class permitted Defendant to unilaterally "force-place" insurance, Defendants were contractually obligated to exercise their discretion to do so in a reasonable manner.

76.     Nonetheless, Defendants have imposed or collected amounts that exceeded the amounts necessary to protect the mortgagee's interest in the policy.  Such practices have included, without limitation: (a) requiring borrowers to pay amounts for insurance coverage that exceeded the amounts necessary to protect the mortgagee's interest in the secured property; (b) backdating force-placed insurance policies, thus requiring borrowers to pay for retroactive coverage despite the fact that the time has lapsed and no loss occurred during the lapsed period; and (c) requiring borrowers to pay amounts for insurance coverage that provided duplicative coverage of policies borrowers already had in place.

77.     Defendants have thus breached the mortgage contracts of Plaintiffs and the other Class members.

78.     Plaintiffs and the other Class members have been damaged as a direct and proximate result of Defendants' breach and are entitled to damages.

**WHEREFORE**, Plaintiffs and the Class members seek a judgment in their favor against JPMorgan and Chase Bank for the actual damages suffered by them as a result

of their breaches of contract and such other relief as this Court deems appropriate and just.

<u>**COUNT III**</u><br><u>**UNJUST ENRICHMENT (against all Defendants)**</u>

79.     Plaintiffs re-allege and incorporate Paragraphs 1 – 63 above as if fully set forth herein and further allege as follows.

80.     Plaintiffs and the members of the Class have conferred a substantial benefit upon Defendants which has been appreciated by Defendants.  During the Class Period, Defendants have benefitted in the form of overcharged for force-placed insurance policies which are excessive and unreasonable, and are the result of overcharging and overreaching.  Further, upon information and belief, Defendants have wrongfully collected millions of dollars in purported commission payments and reinsurance premiums derived from the force-placed insurance premiums paid by Plaintiffs and the putative Class members.  Moreover, Defendants collected and retained premiums for force-placed insurance policies that were unwarranted as the force-placed policies provided coverage duplicative of policies already retained by Plaintiffs.

81.     These payments were accepted and retained by Defendants under circumstances such that it would be inequitable for Defendants to retain the benefit without payment to Plaintiffs and the members of the Class.

82.     Defendants will be unjustly enriched if they are allowed to retain the benefit.  Therefore, Plaintiffs and the respective Class have sustained damages in an amount to be determined at trial and seek full disgorgement and restitution of

Defendants' enrichment benefits, and ill-gotten gains acquired as a result of the unlawful or wrongful conduct alleged above.

**WHEREFORE,** Plaintiffs and Class Members demand an award against Defendants for the amounts equal to the amount each class member enriched Defendants and for which Defendants have been unjustly enriched, and such other relief as this Court deems just and proper.

**COUNT IV**
**DECLARATORY AND INJUNCTIVE RELIEF (against all Defendants)**

83.      Plaintiffs re-allege and incorporate Paragraphs 1 – 63 above as if fully set forth herein and further allege as follows.

84.      On each cause of action stated above, Plaintiffs and the Class will be irreparably injured in the future by the Defendants' misconduct.

85.      Plaintiffs, on behalf of themselves and all Class members, seek a judgment declaring that Defendants must cease the activities described herein, provide Class members with adequate remedies, including, without limitation, refunds and/or credits of all unfair, unlawful or otherwise improper force-placed insurance premiums and provide for adequate procedures and policies to ensure that Defendants' unlawful conduct does not continue.  Such policies and procedures include, without limitation, that Defendants: (a) are prohibited from force-placing insurance when the servicer knows or has reason to know that the borrower has a policy in effect that meets the minimum requirements of the loan documents; (b) cannot force-place insurance that is in excess of the replacement cost of the improvements on the mortgaged property; (c) are prohibited from purchasing the force-placed insurance from a subsidiary, affiliate or any entity in which they have an ownership interest; (d) are prohibited from splitting

fees, giving or accepting kickbacks or referral fees, or accepting anything of value in relation to the purchase or placement of the force-placed insurance; (e) must make reasonable efforts to continue or reestablish the borrower's existing insurance policy if there is a lapse in payment; (f) must purchase any force-placed insurance for a commercially reasonable price; and(g) are prohibited from backdating force-placed insurance policies absent evidence of damage to the property or claims arising out of the property during any lapse period.

86.     Plaintiffs and the Class members do not have a plain, adequate, speedy, or complete remedy at law to address the wrongs alleged in this Complaint, and will suffer irreparable injury as a result of the Defendants' misconduct unless injunctive and declaratory relief is granted.

**WHEREFORE**, Plaintiffs and the Class members seek declaratory and injunctive relief as set forth herein and such other and further relief as this Court deems just.

<u>**COUNT V**</u>
<u>**CONVERSION (against JPMorgan and Chase Bank)**</u>

87.     Plaintiffs re-allege and incorporate Paragraphs 1 – 63 above as if fully set forth herein and further allege as follows.

88.     Defendants had and continue to have a duty to maintain and preserve their customers' mortgage accounts, and mortgage escrow accounts, and to prevent their diminishment or alteration through Defendants' own wrongful acts.

89.     Defendants wrongfully and intentionally collected insurance premiums from their customers' mortgage escrow accounts or added such payments to their customers' mortgage accounts.

90.     Defendants collected these premiums by wrongfully and intentionally taking specific and readily identifiable funds from their mortgage customers' escrow accounts or misappropriating funds paid to its customers' account balances.

91.     Defendants have assumed and exercised the right of ownership over these funds without authorization to do so and in hostility to the rights of Plaintiffs and the Class members without legal justification.

92.     Defendants have retained these funds unlawfully without the consent of Plaintiffs and the members of the Class and have deprived them from exercising control over the funds.

93.     Defendants intend to permanently deprive Plaintiffs and the members of the Class of these funds.

94.     Plaintiffs and the members of the Class properly own these funds, not Defendants, who now claim that they are entitled to ownership of the funds contrary to the rights of Plaintiffs and the Class.

95.     Plaintiffs and the members of the Class are entitled to the immediate possession of these funds.

96.     Defendants have wrongfully converted these specific and readily identifiable funds.

97.     Defendants' wrongful conduct is of a continuing nature.

98.     As a direct and proximate result of Defendants' wrongful conversion, Plaintiffs and the members of the Class have suffered and continue to suffer damages. Therefore, Plaintiffs and the members of the Class are entitled to recover from Defendants all damages and costs permitted, including all amounts that Defendants have wrongfully converted, which are specific and readily identifiable.

**WHEREFORE,** Plaintiffs and Class Members demand an award against Defendants for all damages and costs permitted by law, including all amounts that Defendants have wrongfully converted, and such other relief as this Court deems just and proper.

## COUNT VI
## TORTIOUS INTERFERENCE WITH A BUSINESS RELATIONSHIP (against Assurant)

99.   Plaintiffs re-allege and incorporate Paragraphs 1 – 63 above as if fully set forth herein and further allege as follows.

100.   Plaintiffs and the class members have a business relationship with JPMorgan pursuant to the mortgage contracts. Plaintiffs and the Class have legal rights under these mortgage contracts. For example, the Plaintiffs and the Class have a right not to be charged exorbitant charges in bad faith for forced-place insurance.

101.   Assurant has knowledge of Plaintiff and the class's business relationship with JPMorgan pursuant to the mortgage contracts. Assurant is not a party to the mortgage contracts, nor is it a third-party beneficiary. Further, Assurant does not have any beneficial, economic or supervisory interest in the mortgage contracts.

102.   Assurant intentionally and unjustifiably interfered with the Plaintiffs and the Class's rights under the mortgage contracts, as described above by, *inter alia*, paying kickbacks to JPMorgan.

103.   Plaintiffs and the Class have been damaged as a result of Assurant's interference with their mortgage contracts by being charged bad faith, exorbitant and illegal charges for force- placed insurance in contravention of their rights under the mortgages.

**WHEREFORE**, Plaintiffs and the Class members seek a judgment in their favor against the QBE for the actual damages suffered by them as a result of Assurant's tortious interference. Plaintiffs also seek all costs of litigating this action including attorney's fees.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs on behalf of themselves and all similarly situated individuals demand judgment against Defendants as follows:

A.     Declaring this action to be a proper class action maintainable pursuant to Rule 23(a) and Rule 23(b)(1) and (2) or Rule(b)(3) of the Federal Rules of Civil Procedure and declaring Plaintiffs and their counsel to be representatives of the class;

B.     That the conduct alleged herein be declared, alleged and decreed to be unlawful;

C.     Awarding damages sustained by Plaintiffs and the Classes as a result of Defendants' breach of the implied covenant of good faith and fair dealing, together with pre- judgment interest;

D.     Finding that Defendants have been unjustly enriched and requiring Defendants to refund all unjust benefits to Plaintiffs and the Class, together with pre-judgment interest;

E.     Compensatory, consequential, and general damages in an amount to be determined at trial;

F.     Declaring the provision in the mortgage instrument relating to force-placed insurance to be procedurally and substantively unconscionable and requiring Defendants to refund an amount equal to all hidden profits or other financial benefits

collected from Plaintiffs and the Class, and to rescind all such amounts charged but not yet collected from Plaintiffs and the Class by virtue of the provision;

G.      Awarding damages sustained by Plaintiffs and the Class as a result of Assurant's tortious interference;

H.      Restitution and/or disgorgement of Defendants' ill-gotten gains;

I.      Awarding Plaintiffs and the Class costs and disbursements and reasonable allowances for the fees of Plaintiff's and the Class's counsel and experts, and reimbursement of expenses; and

J.      Such other and further relief the Court deems just and equitable.

## DEMAND FOR JURY TRIAL

Plaintiffs and the Class request a jury trial for any and all Counts for which a trial by jury is permitted by law.

Respectfully submitted,

**GILMAN LAW LLP**


BY:   */s/ Kenneth G. Gilman*
    Kenneth G. Gilman, Esq.
    Florida Bar No.: 0340758
    Thomas E. N. Shea, Esq.
    Florida Bar No.: 0084676
    Beachway Professional Center Tower
    3301 Bonita Beach Road, Suite 307
    Bonita Springs, Florida 34134
    (239) 221-8301 (telephone)
    (239) 676-8224 (facsimile)
    kgilman@gilmanpastor.com
    tshea@gilmanpastor.com

*Attorneys for Plaintiff and Proposed Class*

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that on this  _4th_  day of May, 2012, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing documents is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic filing.

                                        * /s/ Kenneth G. Gilman *